By the Court. Oakley, Ch. J.
This is an action brought to recover damages on a sale of twenty-seven bales of French blankets. The blankets were shipped to New Orleans by the purchaser, and on being opened there, seventeen bales were found to have been injured by moths to such an extent that the damages were appraised at forty per cent, of the market value of sound blankets. Nothing was said at the time of the sale, as to its being a sale by sample, nor was there any express warranty. Samples of the blankets, were however exhibited to the purchaser at the time of the sale, and he did not examine the goods in the bales. It is contended on the one side, that this was a sale by sample, and that thus the blankets in the bales, were warranted to correspond with those shown ; on the other side, it is denied that there was any sale by sample, and if there were, it was said the doctrine of warranty implied from such sales, is an innovation upon the common law which ought not to be sustained.
On looking into the law of the case, we find this subject of sale by sample has been very much discussed. In our own state, certain general rules are now well established. Thus, it is clear that the principle of caveat emptor, is the governing rule applicable to sales in general. If the buyer do not choose to rely upon his own judgment and his examination of the article, he must require a warranty from the seller.
Another rule has grown up, (which is an exception to the general rule,) that on a sale of goods by sample, there is an implied warranty that the bulk of the goods is equal to the sample in quality and soundness. This is a peculiar contract, in which the parties deal in reference to the sample merely, and not in reference to the bulk of the article. And this principle is as well established with us, as the general rule to which it is an exception.
Whether a sale be a sale by sample or not, is a question for the jury upon the evidence in each case; and to authorize a jury in finding the affirmative, it must appear that the parties contracted solely in reference to the sample or article exhibited ; and that both the seller and buyer mutually understood they were dealing with the sample, and with an understanding that *93 the bulk was like it. If these facts be made out, the legitimate consequence follows, that the seller warrants the bulk to correspond with the sample exhibited.
On the first trial of this cause, the question was submitted to the jury in the form we have stated it, and they found that this was a sale by sample. One of the justices of the court doubted whether there was a warranty proved, or whether it was only a representation, and a new trial was ordered. The case is presented to us in effect upon the same evidence. We have considered it, and if necessary, should not hesitate to say, that in our judgment, it is sufficient to establish a sale by sample as we have defined it, although the blankets exhibited were not called samples; that it was so understood by the seller, and received by the buyer. This, in the view we have taken of the case, will have to be submitted to a jury.
Another question was raised at the argument, upon the admissibility of evidence of the existence of a usage of trade in reference to this particular article of French blankets, as to which it is proper to express our opinion. The evidence was given to show that it was the usage of the trade, always to sell these blankets by sample ; and that this practice has grown up by reason of their being exposed and made liable to injury, by opening the bales in which they are imported. We think such evidence is competent. We do not say that the testimony produced in the case before us, comes up to what it should in order to establish a usage of the kind alleged. But our opinion is, that evidence of a uniform usage, in a particular course of trade in this article, is admissible to show what both the purchaser and seller intended at the sale, and that a personal examination of the bulk of the article was not contemplated by either. The opportunity for such an examination of the bulk, is a strong fact in reference to the question whether a sale was or was not made by sample. If the article were in a situation to be examined, it is a circumstance to prove that there was no warranty intended. A usage like that alleged, established by showing the universal understanding reduced to practice, of those engaged in the trade, that such an examination was not to be made on a sale of French blankets in bales, would ob *94 viate the force of the evidence that the bulk of the article might have been examined by opening the bales.
It was insisted that the plaintiff was precluded by the bill of parcels delivered to him, (which is in the ordinary form of a bill of goods sold with a receipt at the foot for the price,) from asserting that there was any warranty; the bill containing nothing on that subject. We do not consider that the bill is to have that effect. Such bills do not include any thing as to the terms or manner of the sale, other than the price fixed. A warranty might be added, but the omission in the bill is not evidence that there was no warranty.
The difficulty, in our minds, is in respect of the damages. There was a long delay at New Orleans, after the injury to the goods was discovered, before the appraisement was made. The condition of the blankets at the time of the sale, was the criterion, and there was no direct evidence on the point. It was sought to infer it from the mode of transportation, and their subsequent state. But we know the injury by moths is progressive, and should not the party have investigated its extent as soon as he found it was going on 1 The evidence before us does not enable us to assess the damages to our satisfaction. We shall, therefore, send the cause back for trial, and the jury on this point must inquire, 1. Whether the blankets were in a damaged condition at the time of the sale ? If they were, 2. What was the extent of the injury when the fact of its existence became known to the purchasers ? If the injury were increased between that time and the appraisement, we at present think, (without intending to decide the point,) that the jury ought to give only the damages which had been sustained, when the was discovered.
New trial ordered.
The cause was again tried in December, 1848, before Sand-ford, J.—Much the same evidence was given as to the particular sale in question, and the general usage of trade in the sale of French blankets. The latter was objected to by the defendant’s counsel, as well as the evidence that allowances were made by the seller after sales by such usage, when the blankets *95 proved to be defective. The plaintiffs proved more fully the condition of the blankets when opened at New Orleans, and the extent of the damage sustained. The proof of usage was more full than in the former case.
The defendant proved that these blankets were a part of sixty bales received by him from France, in the spring of 1844, and in respect of five or six lots of bales sold from the consignment, no claim for damages was made by any of the purchasers.
The defendant offered to prove that in the city of New York, prints, cotton goods, brown and white linen, brown drills, stockings in boxes, kerseys, broad cloths, and other woollen goods, and all articles in bales, boxes, or which are inconvenient to examine, or are sold at wholesale ; are by general usage, sold by exhibiting samples or specimens, in the same manner that the French blankets in question were sold. The questions to this effect, were put in a great variety of forms, as to what was the general usage and custom on such sales ; whether the same general usage spoken of as to French blankets, did not apply to all other goods sold in bales or in bulk, or in what respect it differed. To all this evidence the plaintiffs objected, the judge sustained the objection, and the defendant excepted. The defendant at the proper time moved for a nonsuit, which was overruled.
The Judge charged the jury as follows:
The plaintiffs claim damages on an alleged warranty in the sale of seventeen bales of blankets, which they insist were sold to them by sample. The general rule is, that the buyer of goods has no redress for defects in their quality, unless he has obtained the express warranty of the seller. An exception has arisen from the necessities of commerce, in the sale of goods in large quantities, and it is now established, that on a sale by sample, there is a warranty that the bulk of the goods sold, corresponds with the sample exhibited. This differs' from a mere representation as to quality, for which there is no liability unless it were wilfully false as well as material.
There is no pretence in this case that there was an express warranty. Then, was it a sale by sample ? This is a question *96 of fact for you to determine on the evidence. It does not follow, from the exhibition of a specimen of the blankets, that the sale was by sample ; and you must be satisfied that it was understood by both parties as an agreement or undertaking, that the bulk of the bales corresponded with the blankets exhibited.
You will consider the manner and circumstances of the sale. The opportunity that existed for the examination of the bulk of the article, is a very important element; and you may consider the relative convenience or practicability of making such an examination. In connection with this, is the testimony offered to prove it to be the usage of the trade to sell French blankets by the production and examination of samples. This testimony does not establish any general or uniform usage, such as would prove a contract, or warrant you, from the usage merely, to find that the parties contracted with the understanding, that this was a sale by sample. The evidence, as you will have observed when the subject of its reception was discussed, was not admitted for the purpose of proving a general usage of trade forming a part of the contract, or of itself establishing a sale by sample j but it was received as an item of testimony tending to show, in connection with other evidence, that a personal examination of the bulk of the goods sold, was never contemplated by either party, and that both parties intended to contract upon the sample only; and to make the testimony effective, even to this extent, you must be satisfied that there was a general usage in this trade, not merely to sell by exhibiting a specimen, but to sell thus with a mutual understanding, that the bulk should be like the specimen in all respects.
If upon the whole case, you are not satisfied that these blankets were sold with an understanding and implied agreement by both of the parties, that those in the bales corresponded in quality and condition with the sample exhibited, then no warranty is proved, and the plaintiffs cannot recover.
If you shall find that both parties understood that this was a sale by sample, then the law makes the defendant responsible, if the bales were not equal to the samples. The defendant, however, is not liable for any damage to the blankets occurring after the delivery of them. You must be satisfied that they *97 were moth-eaten, at the time of the sale and delivery. The rule of damages is the difference between the actual value of the goods in New Orleans in their damaged state, and what they would have been worth if they had corresponded with the samples.
F. B. Cutting, for the defendant.
R. J. Dillon, for the plaintiffs.
To this charge, the counsel for the defendants excepted. The jury found a verdict for the plaintiffs, for $1131 38, damages,; and the defendant now moves for a new trial.
By the Court. Oakley, Ch. J.
The law respecting sales by sample, was laid down by the judge at the trial, in exact conformity to our decision in September last, and nothing farther need be said on that subject.
A great number of exceptions was taken by the defendant’s counsel to the ruling of the judge, in excluding certain testimony offered by him, and in the admission of other testimony offered by the plaintiff.
The offers on the part of the defendant were made in all manner of shapes, but with one single bearing, which was this: The court had decided that it was proper to inquire into the usage of trade, as to examining and inspecting the bulk of the particular article in question, viz., French blankets in bales; in order to show that both parties understood an actual inspection was not to be made ; that both buyer and seller perfectly understood this, by the established custom and usage of trade in the article. In accordance with the principle thus established, evidence of such a usage in respect of French blankets was received at the trial. The defendant’s offers were to show that all other bale goods, such as woollens generally, cloths, prints, <fcc., were sold in the same manner.
This was excluded at the trial, and we have no reason to doubt the correctness of the decision. Whether those articles were so sold or not, it could not affect the usage as to French blankets. If the former were sold in the same way, it would *98 not prove the usage as to the latter. Distinct proof of a usage in that line of trade would still be necessary, if any reliance were to be placed on the custom of the trade. If the other articles enumerated were not sold in the mode which the plaintiffs claimed to have proved in respect of French blankets, it would not show that the latter were sold differently from what the plaintiffs alleged.
The defendant objected to the admission of evidence that allowances had been made by sellers for defects, on sales made by exhibiting samples, in conformity to the usage which the plaintiffs were seeking to establish. We think the objection was clearly wrong. The making of such allowances is the most vital part of the usage alleged, and proof of instances of the same, was a component part of the evidence of the usage, than which none could have been more satisfactory.
The motion for a new trial must be denied.